Good morning, Your Honor. Sorry for the monetary delay. That's all right. Thank you for your courtesy. Your Honor, I would like to reserve five minutes of the argument time. Counting down. Pardon me? It's counting down. Okay. Your Honor, my name is Martin A. Shainbaum. I represent the appellant. This case is an income tax refund case involving $31 million and some net operating losses for the years 2000 and 2001. The problem here is the district court granted summary judgment not on a complete review of the record. As we all know. Looks like she made a pretty detailed review of the record. No. Because there were other witnesses and there was other evidence. As you well know, a material disputed issue is intent. Intent can be proven by direct evidence and circumstantial evidence. Nowhere is in her review did she consider the expert witnesses of the government or the taxpayer. And she selected? She just gave an explanation for why or how she concluded or why she concluded that there was no genuine tribal issue of fact here. Well, Her Excellency. You don't have to go through and list every piece of evidence that's submitted and explain her given interpretation or understanding of how it fits into her determination. Yes. She gave the essence of what she believed showed that there was no genuine tribal issue      I'm not going to go through and list every piece of evidence that she gave. There was no genuine tribal issue of fact. It was your burden. They moved and they said you don't have enough or there's not enough evidence in the record to show that this was primarily for profit, this tax shelter. Right. Assuming that's the correct standard of this subject. Well, I think you seriously question that here in the Ninth Circuit? No. All right. Well, then let's assume that the burden of the trial would be on the plaintiff would be on Mr. Scheinbaum to show that his purchase of this, his investment in this tax shelter was primarily for profit. For example, the witness, Steve Smith, testified that there was a substantial profit, that there was no cap on the profit. There was also a look here for tax benefit. The Court never considered the fact this is a U.S. Treasury bond paying 11.25 percent. That in itself to any ordinary folk would consider as a profit instrument. The district court did not consider the testimony of the expert witnesses of the government. Dr. Logue said, boy, this bond could sue. So let's see. Let's see. The position is that this fellow who has a humongous gain during this year is now approaching the end of the year and he's running around as hard as he can to see if he can't get another humongous gain this year for sure to put it along with the other humongous gain he has. That's the position, right? And so he's out there desperately, primarily trying to make another great big profit at the end of the very end of the year, not a loss to offset his other profit, not a paper loss to offset the other profit, correct? Well, the credible evidence here shows that this bond transaction consisted of two components. The bond itself goes up in value as the interest goes down because it's at 11.25 percent. Correct. Then there was a note, swap interest for the interest on the bond. So you could have a gain from the bond value itself and you might have a loss because the spread narrows and that would create a loss. If the spread widened, you'd have income. No one had the crystal ball, I don't believe, on December 5th that the interest rate subject to the market forces would go one way or the other if it went the crystal ball, correct, way, this bond could be held. In fact, I think the bond is still in circulation because I think the expiration date is somewhere in 2015. But luckily it went the wrong way, so he had a great loss to set off against the gain, right? A great paper loss. I mean, fortunately it went the wrong way, so he didn't have to really offset it against a lot of other income, right? Well, that's something that a trier of the fact, considering all the evidence, and that's all a summary judgment is. It's not for any one of us to say what would happen. It's the could a trier of fact, based upon the entire record, giving reasonable inferences from direct and circumstantial evidence, consider that there could be a primary profit motive of the taxpayer entering into the trade deal? So is your argument that because there was a this investment, there was a potential for profit, that that makes it, that that is sufficient to show that his primary motive was for profit? Together with the witnesses that the Court did not consider. What did Smith, what was it about Smith that one could conclude that Smith's view was that he did this primarily to enter a profit-making, you know, a for-profit advantage? In our reply brief, I think we quoted the fact he said the government asked him some There's no cap on the potential for profit with this bond. I mean, any tax loss is a finite amount. But if you read Smith's testimony at the deposition, and then followed up by his declaration, it seems pretty clear that Gonzales was looking for a way to find a loss, as Judge Fernandez has just said. You know, we're not running from the fact that there's a tax benefit component  Well, we're not saying that the point here is that any trier of the fact, given all the evidence, given the entire record, could determine that he had a primary profit motive. When you looked at what the expert witnesses said, when you looked at what Bruce Lemons, the person who wrote the opinion, who analyzed it, in fact went into the So who is it for us to say, if you have a reasonable inference that a trier of the fact could come out with a conclusion that the primary motive here was for a profit? That's all we're asking. So you would rely primarily on Smith's testimony, declaration. And deposition. I meant his deposition testimony. Right. And Mr. Lemons's opinion, 126-page legal opinion, that this was a legitimate tax shelter. And yes. And the fact of his deposition and the answers that he gave to the government, we would also rely on the bond itself, which shows that there was an essential for a profit, 11.25 percent. We would rely on the government's expert, who I asked the question, I said, will the value of this bond zoom? And he said, yes, under certain conditions it would zoom. And our expert said it was a rationally structured investment, albeit it's an aggressive investment, and no one's saying that there isn't a tax benefit component here. But the real issue is, should a trier of the fact, could they, from the entire record, come up with a reasonable inference that would favor the non-movement? And we, who are not the movement, the mover of the motion, we say that there's a reasonable inference here. And so we believe on the entire record that we should be able to do that. So let me ask you this. So you believe that you put forward all that you have to show that this was the one that he undertook this investment primarily for profit? We put forward a sufficient record to show that he put forward a profit factor and that also that there's a tax component to it. And it is under the rule for Rule 56, for a motion for summary judgment, we should have a chance before a jury. I take it the theory you would propound is that any time there's a possible profit factor, but there is, you know, it could, something could generate a profit, then it needs to go to a jury. You can't have summary judgment in that case, correct? No, that's not correct. But we're saying, given the entire record, could you determine under the Landreth and Wyery cases of this circuit that the taxpayer had a primary profit motive along with other factors, including a tax component? Well, never mind the tax component in a second. The question, the thing is, what you're saying is the evidence that seems to me you're emphasizing an argument at least is the people who have said, yes, this thing could generate a profit. Yes. Yes. And so you're, and so, and so what you're saying is, any time you have evidence that says this thing could generate a profit, then you really have a jury question about his intent. Yes. That's correct. Considering all the factors. That's your position. Yes, including the fact that it's a U.S. Treasury bond paying 11.2 percent. Who cares what it is if you've got, if I understand your position, you know, I don't really care if it's a dot-com. It seems to me he made a little money on dot-coms. I don't care if it's a dot-com. Who cares what it is? If you've got testimony from an expert that says, look, this thing could make a profit, then it becomes a jury question whether he went into it for a profit or not. Correct? Yes. But you can't just exclude that. You have to include the entire record of what it is. I want to spend about a minute on this notice of deficiency. I think in the record there's a notice of deficiency, and it covers both 2000 and 2001. And I would ask you to look at Excerpt 1365 and also look at Excerpt 1101, which is the extension of the statute of limitations. You take it together with the statutory scheme you have until at least November 30, 2007. And I want to reserve the rest of my time for rebuttal. And I may cover this point a little further, but I do want to emphasize what's in the record, the excerpts, and I think it speaks for itself. Thank you for your courtesy. Good morning. May it please the Court. My name is Ellen Dalsal, and I represent the United States. I'd like to start with the issue of the claim loss and focus on the correct standard here. As the Court recognized under this Court's opinion in Landreth and the Supreme Court's National Garcia opinion and a wealth of other opinions, it's pretty clear cut, I think, and well-established law that the requirement the taxpayer has to show here is that the taxpayer entered this transaction primarily for profit, not just that there was some profit potential. So it's not enough that they can come forward with an expert saying that there was some profit potential. I mean, typically with this kind of tax shelter, there is some remote sweet spot, you know, where you might hit some large profit. But the idea that the taxpayers entered into this sort of thing to get a loss, and here we have a very clear record on which the district court correctly found. There's just no reasonable inference that tax wasn't the primary motivation and that you just — there simply can't — no way that the taxpayer, if a trial went forward, could show that the motivation was not. And it doesn't take a lot to raise a genuine tribal issue of fact. Well, here I think we have the proverbial smoking gun. The taxpayer here is deceased, and so we have really only the people who talk to him about this transaction, and that's his accountant, Steve Smith, his financial advisor, Robert Gallo, and John Larson, who was the promoter of the transaction, who pleaded the Fifth Amendment and so didn't give us any information and is not anticipated to. And so with those — the two fact witnesses that we have who actually dealt with the taxpayer, they both came forward with testimony that very clearly established that tax was the motivation. The unrebutted testimony of Steve Smith establishes that they went looking for a shelter transaction, that they approached John Larson first, that then they went to — when he didn't have anything because it was too close to the end of the year, they went and invested in this PICO transaction. And when Larson came back with the instant transaction that the taxpayer actually invested in, then the taxpayer decided to do that instead. But at the outset, he actually had a conversation — they had a conversation with Larson where Larson said, you know, what is your gain, and said this transaction can be structured to yield that kind of loss. So it's very clear from that that that's what taxpayer was looking for. I suppose that there's evidence on the other side that there's an extraordinarily good chance that this is going to make an enormous profit. For example, you have an expert that says, you know what, this was a 99 percent profit deal. This was really — this was almost the goose that laid the golden egg. They just needed a little money to get it going. I suppose that would be some evidence suggesting a profit motive, no? If that were the case. This is a hypothetical. You're in the hypothetical world now? Yes, Your Honor, because that's certainly not the case here. I didn't say it was. But I think here, you know, even in that situation, if you had the sort of clear testimony that we have here, that the goal of the taxpayer was to get a loss, that the taxpayer said, can we set it up so that I can get this loss at the outset, and then his understanding from his accountant, business accountant, Steve Smith, and his financial advisor, Robert Gallo, said that they were — Gallo said he was sure tax was the primary motivation, and Smith said, although there might have been profit potential, they didn't go looking at it from that perspective, that they went looking for a loss. So we have actual testimony from the only people who had the conversations with the taxpayer saying that's what he was intending to get. The taxpayer himself doesn't contradict it, because he's not here to say anything. We don't have any testimony from him. So the only factual information before the Court is that.  The taxpayer here didn't try to seize on that. The taxpayer exited this transaction in only 20 days on December 28th, right at the close of the tax year, just in time to get his big loss. And all those factors, I think it's really impossible for a charter of fact on that sort of record, even if there were some astronomical profit potential down the road to conclude that he was acting with any reason other than primarily to get his tax loss. And so I think, you know, it's impossible under that circumstance to meet the primarily-for-profit standard. But I think this is the sort of tax shelter where I think there wasn't, you know, there's not going to be the evidence at trial. And if you look at what expert report material is in the record, it's a remote chance of profit. And, you know, to get enough profit to offset the fees would be an even more remote thing. And, you know, I think there are a lot of tax shelters where clearly the motivation is the tax loss, where, you know, there is some, you know, odd sort of circumstances where the stars could align to yield a big profit. But that's not the question. The question is the taxpayer's primary motivation. And I think here no reasonable inference can be drawn from the record that the taxpayer was motivated primarily by getting a profit. And that is the relevant standard that the Court needs to focus on here. Are there any other questions about that issue from the Court? Roberts. What do you address the other issue? With respect to the claim that the 2001 net operating loss could be deducted, the statute of limitations has run on that refund claim. And if you look at section 6511D, I believe it's D2, that sets forth the time, 6511D sets forth the time for net operating loss, for claiming net operating loss. And it runs from the time that the statute of limitations expires with respect to the year that the net operating loss arises. And here the taxpayer is claiming a net operating loss for 2001. And if you've parsed through that statute, it allows the time for filing a net operating loss claim based on 2001 net operating loss to be extended until 6 months after any agreed-upon extension for assessment. And so that put it at June 30th. So the time for assessment ran on December 31st, 2006. And so on June 30th, 2007, the time in which any net operating loss claim based on 2001 refund claim could have been brought had run. And the taxpayer didn't file any claim until August 2007. And I think the taxpayer is now trying to go back and say, well, wait a minute, there was this 2000 year 2000 notice of deficiency that mentions 2001. So trying to claim based on that that there can be some sort of a further extension. But there's just absolutely no merit to that argument from a number of perspectives. First of all, the code defines what is a notice of deficiency in section 6211 and dictates when a notice of deficiency or defines a deficiency in 6211. And 6212 says a notice of deficiency can only be issued when there is a deficiency for that year. So if you look at the first page of the notice of deficiency, the taxpayer is relying on it, Exit for Record 1365, it clearly shows a deficiency only for 2000 on the first page. It says year 2000 and the amount of additional tax. And that's the disallowance of the loss from the Presidio transaction. And because part of that loss was carried over to 2001, the notice of deficiency also says that the taxpayer wouldn't be allowed that carryover to 2001, and that the mathematical adjustments flow to 2001 because there are caps on itemized deductions and things like that based on how much income you have, and if you have less loss, then your income is adjusted. But the end result of all those computations is that there was no deficiency in tax for 2001. So there's no notice of deficiency for 2001 in the first place. So you can't say based on this year 2000 notice of deficiency that somehow that extended the statute of limitations. And I think if you look at all the statutes the taxpayer cites and even, you know, the entire provisions dealing with deficiencies and statutes of limitations in the Code, there's nothing that says when a notice of deficiency is issued, the time for filing a refund claim gets extended. The notice of deficiency does hold the time for the government to make an assessment while the ball is in the taxpayer's court, because the taxpayer could challenge the deficiency in tax court, and the taxpayer basically gets a reprieve from assessment while that process goes on. But the taxpayer could still file a refund claim for anything he's already paid or anything he disputes, and he has a choice to go into tax court and have his liability adjudicated. And so Congress chose just to extend the time for assessment, and there's no parallel extension for refunds. And I think if you look at the Supreme Court jurisprudence on this, the recent Clitwood-Elkhorn mining case just a couple of years ago, and there's earlier cases like the Don and the Brokamp case, the Supreme Court has been very clear that this waiver of sovereign immunity to allow refund suits is subject to a number of time limits and restrictions that courts can't expand by inference. And so without any provisions in the Code allowing this extended statute of limitations, you can't say just because there's more time for assessment, even if that somehow creates an alternative refund, you know, also a refund extension. And so I think we're we have a very clear-cut time limit that ran out on June 30th, 2007, for this net operating loss, and there's no way the taxpayer can get around that here. Are there any questions from the Court? Does that record? I don't think so. Are there no further questions? I have nothing further. Your Honor, I think that if you look at the excerpt for the record, the extension itself, E-1101 and E-1102, it points out that the taxpayer may claim credit or refund for the and the service may credit the refund within 6 minutes, 6 months after the refund. The whole point of this was to extend the period of which the IRS could assess. As a matter of fact, there's a parallel statute at Title 26, 6512b3d, which states if at the time at the notice of deficiency was issued, the taxpayer could have claimed a refund and did or did not file a refund claim, you still are allowed a refund claim. I think, Your Honor, if you look at also the notice of deficiency starting at excerpt 1365, you see it's addressed not only to Thomas Gonzalez, deceased, but also to his executor raising a transferee liability problem, giving the IRS an additional year in which to assess, and they would do that. And if you look in the body of the notice, you will notice that it talks about 2001 and 2000, and they're integral. So in computing the extension from December 6th to May 5th and adding the 25 days left over from the agreement, you go to May 30, and under the agreement, they say if you have a notice of deficiency issued, you still have the other 6 months to go. So I think, Your Honor, that it's clear what Congress intended. Congress did not intend to foreclose a refund for a taxpayer under these circumstances where the IRS unilaterally issued the notice on December 6th prior to the extension. Now, going back to the other issue, if you – on a hypothetical again, if you assume that the profit was infinite because the bond, as the government experts said, could zoom, and the cap – Well, that's an exaggeration. It's in the record that there's no cap, it's infinite. That can't be true, can it? Yes. I mean, how about September 2008 when everything crashed around here? If you had that bond, it would zoom. 11.25 – It would still have a cap, even if it zoomed. Well, it depends on the market forces. That's the point. Arms' length, market forces. Nobody can control it. So just if you make this assumption that the tax benefits were finite, isn't it true that a reasonable factfinder could look at this and say, well, you know, there was a profit motive here that was primary? All we're asking for is given a fair inference in the record of all the evidence, could a factfinder find that there was a primary motive to make a profit as well? I mean, Mr. Gonzalez, who is deceased – I think you just hit the – I mean, you said make a profit as well. Right. It has to be primary. Primary profit. That's what would happen here, a primary profit as well as a tax benefit. Now, Mr. Gonzalez, who is deceased, just came off, as you pointed out, making a lot of money, and he was very interested, from what I could see, in continuing to make money and also to get a tax benefit. So as far as I know, there's no restriction if you do have that primary profit motive to make a profit and get the tax benefit. And I think we ought to be entitled to look at the entire record. There were other witnesses from depositions that the Court didn't look at that explained his background. And that's circumstantial evidence. I mean, having tried cases of intent and knowing this Court has seen a lot of intent and a trial court judge knowing about intent, how do you prove intent? You prove it by direct evidence and circumstantial. Yes. And what is it in the record? The record contains witnesses that weren't considered, contains documents,   And the Government is you have a falling back as you conduct a judicial impact to make a reasonable inference of profit. Thank you, Your Honor. Roberts, thank you. Thank you very much, Mr. Steinbaum, and counsel for the government. We appreciate your arguments. Interesting case.
judges: Settle, Fernandez, Paez